IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KEVIN DEBERRY, #97808-020,       )
                                 )
            Petitioner,          )
                                 )
      v.                         )      CASE NO. 2:19-CV-562-ECM-SRW
                                 )              [WO]
                                 )
WALTER WOODS,                    )
                                 )
            Respondent.          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

This case is pending before the court on a 28 U.S.C. § 2241 petition filed by Kevin

Deberry, a federal inmate confined at the Maxwell Federal Prison Camp.  In this petition,

Deberry challenges the constitutionality of a disciplinary he received for violation of Prison

Code 108, Possession, Manufacture and Introduction of a Cellphone while he was confined

at Maxwell. Specifically, Deberry asserts the following claims: (1) Violation of Double

Jeopardy because "[t]he incident report that gave rise to the sanctions now being appealed

was dismissed upon previous appeal. The institution retried the matter and reimposed the

sanctions along with loss of good time."; and (2) Violation of Due Process because (a) the

incident report was issued in violation of §541.5(a) since staff became aware of the incident

on September 25, 2017, and the report was not delivered to the Petitioner until October 16,

2017; (b) a written copy of the Disciplinary Hearing Officer's (DHO's) findings was not

given to him in violation of  §541.8(h); and (c) on remand, he was not given notice of the

new hearing or time to prepare a defense in violation of §541.5(a). Doc. 1 at p. 4. Petitioner seeks restoration of good time taken as a result of the disciplinary, dismissal of DHO findings, and expungement of the disciplinary. Doc. 1 at 5.

The Respondent filed responses and relevant evidentiary materials—including affidavits, records and applicable prison statements/regulations—addressing the claims presented by Deberry. In these responses, the Respondent denies any violation of Deberry's constitutional rights. Docs. 15, 23. Furthermore, the Respondent argues that petitioner's claims are not exhausted properly. Doc. 15. In light of the arguments and evidence presented by the Respondent, the court entered orders affording Deberry an opportunity to demonstrate why this petition should not be denied. Deberry filed responses to these orders and addressed the issues raised by the Respondent, including exhaustion. Docs. 19, 30.

Upon review of the petition, the responses filed by the Respondent and applicable federal law, the court concludes that the 28 U.S.C. § 2241 petition for writ of habeas corpus filed by Kevin Deberry is due to be dismissed.

## II. DISCUSSION

### A. FACTS

The incident report completed in this matter on October 16, 2017 by W. Harris Lt. Number 3037140 states that on September 25, 2017, he conducted a pat search on Deberry while in cubicle Montgomery M02-001L and "discovered (1) Black in color LG Touchscreen Cell Phone  S/N # 705VTTD1199761 concealed inside of a black sock, located in the left front pocket of his shorts that he was wearing." Doc. 15-2 at p. 3. The

section of the report concerning "Committee Action" reflects that Deberry stated "he was wearing jogging pants not shorts." *Id.* The Committee referred the charge to the DHO for further hearing. *Id.* Deberry received a copy of this charge on October 16, 2017. *Id.* The investigation began on the same day. Doc. 15-2 at p. 4. The report section concerning "Investigation" reflects that on October 17, 2017 Deberry was advised of his right to remain silent and stated that he understood his rights and that he had received a copy of the incident report. He also stated, "I had the phone in my jogging pants. I did not have the phone in my shorts." *Id.*

Deberry was advised by a form completed by the Warden on October 16, 2017, that the prosecution of the charge against him had been suspended while the matter was referred to the U.S. Attorney's office for possible prosecution. Doc. 15-2 at p. 6. The U.S. Attorney declined to prosecute on October 13, 2017. *Id.* On October 17, 2017, Deberry was provided with copies of the "Inmate Rights at a Disciplinary Hearing," Doc. 15-2 at p. 8, and Notice of Discipline Hearing before the DHO. Doc. 15-3 at p. 10.

The Discipline Hearing Officer Report confirms that Deberry's hearing involving this charge was held on October 26, 2017, that he did not request a staff member to represent him at the hearing, and that he called no witnesses in his defense. Doc. 15-2 at p. 12. Deberry admitted the charges against him. Doc. 15-2 at pp. 4, and 12-13. After considering the evidence, including Deberry's admission, the DHO found that Deberry violated Prison Code 108. Doc. 15-2 at p. 13. The Petitioner lost 40 days of Good Conduct Time, 120 days of telephone privileges, and 120 days of commissary privileges. *Id.*

Deberry appealed the penalties in the original report. The appeal was denied, but the Discipline Hearing Administrator ordered an amended report that included Deberry's statement of confession. Doc. 15-2 at p. 15. Deberry was advised that he could appeal the amended report. *Id*. Prior to submission of the revised report, Deberry attempted to appeal on March 5, 2018. Doc. 19-1 at pp. 2-3. He was advised, "[a]fter the report has been amended; if you elect to appeal the disciplinary action you should file an appeal directly to this office." Doc. 19-2 at p. 2.

On May 11, 2018, the Discipline Hearing Officer Report was revised to reflect Deberry's admission that "the cell phone was mine." Doc. 15-2 at p. 18. Deberry first appealed the revised report on May 24, 2018, but this appeal was denied because, among other reasons, it was not submitted on the proper form. Doc. 19-4 at p. 2. Deberry claims that he was given the wrong form by prison personnel. Deberry next appealed the revised report on June 19, 2018. Doc. 15-3 at pp. 2-16; 19-5 at p. 2. This appeal was denied as untimely. Doc. 15-3 at p. 16; Doc. 19-6 at p. 2. Deberry again attempted to appeal the revised report on October 3, 2018. This appeal was again denied as untimely. Doc. 19-6 at p. 2. Deberry made no further appeals of the amended report. Doc. 15-3 at pp. 2-16. Deberry attempted to appeal the original report on January 28, 2019, but was advised that report had been superceded by the amended report. Doc. 15-3 at pp. 4, 18-20.

Deberry contends that the disciplinary action violated his rights to due process and his right to be free from double jeopardy. He also contends that his efforts to exhaust the

appeal process were thwarted by prison officials.  Thus, the court will address his claims on their merits.

### B. ANALYSIS

#### 1. <u>Due Process</u>

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required:

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

Due to Petitioner's loss of good time imposed as a result of the challenged disciplinary, the second situation is present in this case. *Id*. In the context of a prison disciplinary proceeding where a protected liberty interest is implicated, the Due Process Clause requires the provision of three procedural protections which are (1) advance, written

notice of the charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence, and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action taken. *Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974).

> The Supreme Court later clarified that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . .'" *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455–56, 105 S.Ct. at 2774.  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*. at 456, 105 S.Ct. at 2774.  In *Hill*, the Supreme Court upheld the determination of a disciplinary board even though the evidence "might be characterized as meager" because the record was not so devoid of evidence as to render the board's decision arbitrary. *Id*. at 457, 105 S.Ct. at 2775.

*Tedesco v. Sec'y for Dep't of Corr*., 190 F. App'x 752, 757 (11th Cir. 2006).  It is not, however, the function of this court to assume the task of retrying prison disciplinary disputes and no *de novo* review of a hearing officer's factual findings is required when the decision is supported by some evidence. *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.), *cert. denied*, 455 U.S. 992 (1982).  This court must only determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary [hearing officer]." *Hill*, 472 U.S. at 455–56.

6

A thorough review of the disciplinary reports demonstrates that the disciplinary proceedings comported with all of the requirements of *Wolff* and *Kyle*. Correctional officials furnished Deberry with advance, written notice of the charge against him; allowed him the opportunity to call witnesses, question the reporting officer, and present evidence on his own behalf; and provided written statements by the fact finder of the evidence relied on and the reasons for the disciplinary action. Doc. 15-2 at pp. 12-13; Doc. 15-2 at pp. 17-18. Additionally, Deberry received notice from the Regional Director that the report would be revised and he had the opportunity to appeal the revised report. Doc. 19-2 at p. 2; Doc. 15-2 at p. 15. The testimony of the reporting officer and Deberry's admission of guilt constituted some evidence to support the decision of the hearing officer. Nothing more is required by the Constitution. It is therefore clear that Deberry received all the process to which he was due in the disciplinary proceedings.

With respect to Deberry's specific claims of the Respondent's failure to afford him due process, the court likewise concludes that they have no merit. First, Deberry claims that he received his incident report more than 24 hours after the incident and that this violates 28 C.F.R. § 541.5(a), which states that "[y]ou will **ordinarily** receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." (emphasis added). Courts interpreting this section have noted that the word "ordinarily" renders the section "flexible . . . designed to accommodate" additional time for investigation before the filing of an official charge. *Mendoza v. Tamez,* 451 Fed. Appx. 715, 717 (10th Cir. 2011). Further, courts have concluded that these guidelines allow the

warden to extend time by written permission, even if that permission is granted after the fact. *See Berkun v. Terrell*, 2011 WL 4753459 at *3 (E.D.N.Y Oct. 7, 2011). Thus, the court concludes that 28 C.F.R. § 541.5(a) does not require 24-hour delivery, especially here where the warden extended the time to provide the incident report and advised Deberry of the delay. Doc. 15-2 at p. 6.

Further, even if it were to find delivery of the report was improperly delayed in contravention of this section, the court cannot conclude that any constitutional concerns arise so long as the prisoner receives notice of the charges against him at least 24 hours before the hearing. *Wolff,* 418 U.S. at 564. Deberry received this report on October 16, 2017. Doc. 15-2 at p. 3. The hearing was held ten days later on October 26th. Doc. 15-2 at p. 12. Thus, Deberry received the notice required by the Constitution. Further, because Deberry alleges no prejudice as a result of the delay, due process was satisfied. *See, Berken, id.* (Citation omitted).

Next, Deberry claims that a written copy of the Disciplinary Hearing Officer's findings was not given to him, in violation of 541.8(h). This claim is without merit. The Discipline Hearing Officer Report for the revised incident report clearly showed delivery to Kevin Deberry Reg# 97808-020 and advised him of the 20-day time period to appeal. Doc. 15-2 at p. 18.

Finally, Deberry claims that on remand he was not given notice of the new hearing or time to prepare a defense in violation of 541.5(a), and he now denies that he admitted the charges against him. However, the record is clear; when Deberry was presented with

the original incident report, he was advised that he was charged with possessing a black LG Touchscreen Cell Phone which he "concealed in a black sock, located in the left front pocket of his shorts that he was wearing.  Doc. 15-2 at p. 3. Deberry stated, "I had the phone in my jogging pants. I did not have the phone in my shorts." Doc. 15-2 at p. 4.  The Regional Director did not reverse the findings and penalties in the original report. The revised report was ordered for the purpose of adding an additional factual statement.  Doc. 15-2 at p. 15.  The revised report included the statement that "you inmate Deberry, Kevin Reg #97808-020 stated during the Disciplinary Hearing, 'the cell phone was mine.'"  Doc. 15-2 at p. 18. Deberry was not entitled to a new hearing where no new facts were considered. This is especially true where, as here, Deberry admitted his guilt.  Doc. 15-2 at p. 4, and 12-13.  Since no new hearing was required or held, this claim fails.

  **2.  <u>Double Jeopardy</u>**

  Deberry claims that he was subjected to double jeopardy because "[t]he incident report that gave rise to the sanctions now being appeal was dismissed upon the previous appeal.  The institution retried the matter and reimposed the sanctions along with lost of good time." Doc. 1 at p. 4.  However, "this claim is legally frivolous since jeopardy does not attach at prison disciplinary hearings." *Williams v. Weaver,* 2000 WL 1844684 at *4 (S.D. Ala. Nov. 7, 2000); *Wolf v. McDonnell,* 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.").  Further, the facts in this matter demonstrate unequivocally that the matter was never retried, no new evidence was

admitted and the appeal time was extended from the date of the revised Discipline Hearing Officer Report.  Doc. 15-2 at p. 18.  Thus, Deberry suffered no prejudice.  Accordingly, summary judgment is due to be entered on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The Respondent's motion for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of the Respondent.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the Petitioner.

On or before December 27, 2021, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.

Frivolous, conclusive, or general objections to the Recommendation will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 10th day of December, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge